IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| ISLAND GREEN, LLC, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | No. 09-0050 |
| | : | |
| CARMEN BRYAN QUERRARD, | : | |
| Individually and as the Executrix of | : | |
| the Estate of Joseph A. Bryan, et al., | : | |
| Defendants | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                                                March 31, 2010

      This is a diversity case brought by Island Green, LLC, against thirteen heirs of Joseph A. Bryan, seeking a declaratory judgment and other injunctive relief concerning a parcel of land located on Inner Brass Island, a small island off the coast of St. Thomas. The plaintiff also brings claims of slander of title; defamation; intentional interference with business relations; abuse of process; and trespass and trespass by injury to trees, timber, and shrubs. The defendants have filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, I will grant the motion in its entirety.

**I. BACKGROUND**

      Inner Brass Island is a small island off the northern coast of St. Thomas. Currently, there are no full-time residents on the island which has seen some development and modest improvements over the years. See Compl. ¶¶ 20, 21.

In September 1967, Joseph A. Bryan and James LaPlace, both owners of some property there, entered into an agreement to partition the entire island between them. Id. ¶ 23. Mr. Bryan became the sole owner of the western half of the island plus a one acre beachfront parcel on the eastern half. Id. Mr. LaPlace became the sole owner of the eastern half of the island with the exception of the one acre lot conveyed to Mr. Bryan. Id. The deed and agreement were recorded with the Office of the Recorder of Deeds.[1] Id. The agreement between the two men expressly created a twenty-foot wide perpetual easement running from Mr. Bryan's one acre parcel on the eastern side up to and connecting with his portion of the island on the western side. See Def's Exh. A ¶¶ 3, 4; see also Def's Exh. C ¶ 1.

A month after the recording, Mr. LaPlace conveyed his property to Leon Stackler by warranty deed. Id. ¶ 24. The recorded deed specifically indicates that the conveyance is made subject to the twenty-foot wide right-of-way established by the agreement between Mr. Bryan and Mr. LaPlace.[2] See Def's Exh. D at 2. In 1969, Mr. Stackler established and recorded a subdivision roadway which had been approved by the Planning

---

[1] A copy of the Agreement was attached to the defendants' motion to dismiss. See Exh. A. The Agreement bears the stamp of the Office of the Recorder of Deeds and shows that it was recorded there on April 29, 1982. Because this document is one upon which allegations in the complaint are based, it is properly reviewed here. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

[2] A copy of this warranty deed was also attached to the motion to dismiss. The deed also bears the stamp of the Office of the Recorder of Deeds and shows that it was recorded there on December 29, 1967. Allegations in the complaint are based on this document, and as such it is properly reviewed here. See Pension Benefit Guar. Corp., 998 F.2d at 1196.

Board.  See Compl. ¶ 25.  The eastern section of the island was subdivided into various parcels which were accessed by a roadway right-of-way.  Id.  In 1981, Mr. Stackler sold all of these parcels to third parties at an auction.  Mr. James Settlemyer bought Parcel No. 3.  Id. ¶ 26.

In June 1988, Mr. Bryan filed suit in the District Court for the Virgin Islands against Mr. Stackler, alleging that when Mr. Stackler bulldozed the road in 1969, he cut across a corner of Mr. Bryan's one acre parcel on the eastern side.[3]  Id. ¶ 27.  In response, Mr. Stackler argued that Mr. Bryan had agreed to the location of that road and had received a separate parcel of land (No. 22) to compensate for the existence of the road. Id. ¶ 28.  Mr. Stackler also argued that he was entitled to a prescriptive right to the roadway because Mr. Bryan had been aware of the location of the road for more than fifteen years.  Id.

Following the death of Mr. Bryan in 1990, the district court granted leave to add seventeen owners of the property as defendants in the case.  Id. ¶ 29.  Within a year, the parties executed a Consent Judgment and Stipulation[4] dismissing the action with prejudice:

---

[3] The defendants attached a copy of this case's paper docket to their motion to dismiss. See Def's Exh. G-2 through G-9.  This document is properly reviewed here as allegations in the complaint are based upon it.

[4] The defendants attached a copy of this Consent Judgment and Stipulation to their motion to dismiss.  See Def's Exh. G-12 through G-21.  Because this document is one upon which allegations in the complaint are based, it is properly reviewed here.

> All claims or causes of action which plaintiff, or the heirs, successors or assigns of Joseph Bryan may now or hereafter have against defendant Stackler, his heirs and assigns, arising out of the application for and receipt of preliminary and final approval of the subdivision of the Eastern Section, Inner Brass Island, as shown on PWD A-9-120-T69, by the Virgin Islands Planning Board, the creation of the estate roads in accordance therewith, the filing of PWD A9-120-T69, and all conveyances of land and interests in land on the eastern one half of the island known as Inner Brass, St. Thomas, Virgin Islands, in accordance with the roads and parcels as shown on said subdivision map, hereby are withdrawn and released, with prejudice.

Id. ¶ 30.  As further part of that stipulation, it was agreed that a twenty-foot right-of-way would be given over Parcel No. 3 for the benefit of Parcel No. 2:

> [A]s against defendants Virgin Islands Cay, Inc., et al., a 20' ROW upon and over Parcel #3 on said map for ingress and egress to the roadways shown upon said map, from that certain parcel of land owned by plaintiff, designated as Parcel #2, previously shown in part and designated on PWD B9-176-T67 as Parcel 1-1.  Such ROW shall run along the northerly boundary of said Parcel #3, taking into consideration directness of access and terrain . . . and shall benefit the lands of plaintiff as aforesaid, the successors and assigns of plaintiff, in perpetuity.  ***Such ROW shall be preserved in a more formal agreement to be made by and between plaintiff and Virgin Islands Cay, Inc. or the successors and assigns of those parties pursuant to a formal survey of such ROW to be made at the expense of plaintiffs, on or before three months from the date of such survey.***  The parties shall thereafter negotiate for a change in the location of such ROW at the request of Virgin Islands Cay, Inc.

Id. ¶ 31.  (Emphasis added).

The actual Consent Judgment and Stipulation was not filed with the court or

placed on the case's docket sheet. Id. ¶ 32. The district court's Order approving this stipulation and dismissing the case on October 19, 1992, however, was docketed. Id. ¶ 34; see also Def's Exh. G-8, Document #164. In July 1992, a release of *lis pendens* relating to the lawsuit was filed confirming that the case had been settled. See Compl. ¶ 33.

In June 1994, Carmen Bryan Querrard, the executrix of the Estate of Joseph A. Bryan, filed a motion for relief from the district court's Order dated October 19, 1992. Id. ¶¶ 35, 39. In July 1996, the district court entered a Stipulation and Order for Dismissal of Post-Judgment Motions which provided that the Estate of Mr. Stackler[5] would convey three parcels on the island, i.e., Nos. OL, 22, 34, to the Bryan Estate in exchange for a payment of $5,000, and that the original stipulation would remain in effect except as modified by the latter one. Id. ¶¶ 36, 37. The court's Stipulation and Order of Dismissal of Post-Judgment Motions were never filed in the Office of the Recorder of Deeds. Id. ¶ 39.

In December 2005, Yves DeDiesbach, the president and owner of Virgin Islands Cay, executed a warranty deed to convey Parcel No. 3 to the plaintiff for good and valuable consideration. Id. ¶ 42. This deed was "filed and recorded" with the Office of the Recorder of Deeds on January 30, 2006. Id.; see also Def. Exh. F. The deed also specifically indicates that the conveyance was subject to all "restrictions, covenants,

---

[5] Mr. Stackler died on February 15, 1994, following the entry of the original judgment. See Compl. ¶ 36.

agreements, conditions and easements as of record appear." Id.

After Island Green purchased the lot, Ethel Bryan, a self-proclaimed representative of the Estate of Joseph A. Bryan, prepared and presented a Request for Survey Registration to the Public Surveyor, which sought to register a map prepared by surveyor Timothy Tallman depicting the easement across Parcel No. 3. Id. ¶ 44. This survey was contemplated by the Consent Judgment and Stipulation filed by the parties and approved by the district court. Id. ¶ 30. The Request identified Miss Bryan as the "agent," and indicated that all adjoining owners were aware of the survey. Id. ¶ 46. The complaint alleges that despite that indication, neither the plaintiff nor anyone else acting on behalf of the Bryan Estate were ever provided with the survey or the Request for Survey Registration. Id. ¶ 47. In March 2006, the Public Surveyor registered the map which depicted the easement. Id. ¶ 48.

In June 2006, by warranty deed, Island Green acquired Remainder Parcel No. 2, consisting of forty-one acres from the Estate of Joseph A. Bryan for good and valuable consideration. Id. ¶ 49. This deed was recorded in June 2006. As part of this purchase, Island Green entered into an easement agreement which conveyed to the Bryan Estate a perpetual easement for the purposes of ingress and egress to the northern access to the thirty-foot wide estate road on, over, and across that certain portion of property marked "Easement B" as shown on a survey conducted by Harry Gauriloff. Id. ¶ 50. This easement agreement was recorded with the Office of the Recorder of Deeds. Id. ¶ 50.

6

In January 2007, Yves DeDiesbach executed an affidavit which stated:

> I hereby certify and state that I, Yves De Diesbach, neither gave permission nor approval for, nor did I acquiescence [sic] in, the placement of the easement in favor of the adjacent Parcel 2 over Parcel 3 as shown on OLG File No. D9-7748-T006, by written or verbal communication, or otherwise. Furthermore, I certify and state that I never participated in a site inspection of the said property or any other meeting or discussion with the purpose or intent of confirming the location of the said easement. . . . I was never on Inner Brass with Ethel Bryan at any time to discuss this easement or its placement, nor did I ever visit the island with Ethel or her representative for this purpose. Finally, I have no information regarding and do not believe that my attorney, Edith Bornn, visiting [sic] the island for this purpose or that she had any discussion with Ethel Bryan regarding the placement of any easement as shown in OLG File No. D9-7748-T006.

Id. ¶ 53. After the execution of this affidavit, Mr. Tallman wrote a letter to the Public Surveyor which stated:

> Prior to this I firmly believed the owners or agents to be aware of this plat and the staking of this Easement. This Affidavit clearly states the interested parties had no knowledge of this plat or the physical easement staked out at the time. As a result of this information I request that this plat be voided. Your assistance in this matter is as always much appreciated.

Id. ¶ 54. The Public Surveyor responded to Mr. Tallman in March 2007:

> I am writing in response to your written request, dated January 25, 2007, to have the plat voided for Easement "A" over Parcel No. 3, Inner Brass Island ("West") – which is shown on (OLG Drawing No. D9-7748-T006). This request has now been officially granted and said plat/map is hereby voided.

7

Id. ¶ 55. A copy of this letter was directed to Ethel Bryan. Id. ¶ 56. In September 2007, the Public Surveyor reinstated the voided map and filed a Public Surveyor's Note which read:

> Based on legal opinion issued by the Office of the Attorney General to the Office of the Lieutenant Governor, and based on the corresponding directive of Lt. Governor Gregory Francis to the Office of the Tax Assessor, this map hereby depicting Easement "A" over Parcel No. 3, Inner Brass Island and which was originally voided on March 5, 2007, is hereby reinstated and approved.

Id. ¶ 57. The plaintiff alleges that it was not provided with the legal opinion issued by the Office of the Attorney General or with the directive of the Lieutenant Governor. Id. ¶ 58. In December 2007, the Attorney General's office wrote a letter to the Chief Policy Advisor of the Office of the Lieutenant Governor, which stated:

> Upon review of the relevant files and documentation received by this office, we have been unable to confirm that a consent decree had been entered by the District Court of the Virgin Islands or a document evidencing that all of the parties had executed an agreement for such an easement. The "Consent Decree" tendered to your office by Ms. Bryan is only a proposed Consent Judgment, which was not approved by the Court. Until we receive appropriate proof that a consent decree was entered by the Court or that an agreement creating an easement was executed by all parties involved, I have no choice but to advise the Division of Cadastral to remove the map dated July 19, 2003 showing a 20 [foot] ROW over Parcel No. 3 Inner Brass Island.

Id. ¶ 59. In response to this letter, Ethel Bryan, acting on behalf of the Estate, engaged counsel who sent the Attorney General the original signed Consent Judgment and

8

Stipulation of the parties together with the court's Order approving that Stipulation. Id. ¶ 60. A few days later, counsel also sent a copy of the Release of *Lis Pendens* and a copy of the court's Stipulation and Order for Dismissal of Post-Judgment motions. Id. ¶ 64. In January 2008, counsel supplemented his previous letters with a copy of the district court's Order approving the Stipulation between Mr. Bryan's estate and Mr. Stackler from 1992. Id. ¶ 66. Several days later, the Public Surveyor wrote a letter to Surveyor Timothy Tallman advising him that the map in question is "officially returned to void status. This action therefore rescinds the reinstatement status of said map that was initiated on September 6, 2007." Id. ¶ 68. In late January 2008, the Attorney General acknowledged counsel's letter of January 2, 2008 and stated, "I have decided to refrain from taking any further action in this matter," and "it is my position that the court is the appropriate forum to address these matters." Id. ¶ 69.

In December 2008, Miss Querrard, acting as Executrix of her father's Estate, recorded a "Notice of Interest" in the Office of the Recorder of Deeds, which stated:

> COMES NOW the Estate of Joseph Bryan, by its Executrix Carmen Bryan Querrard, and hereby gives notice of its interest as easement holder in the following described property: Parcel No. 3, Inner Brass Island (Eastern Section), No. 6A Little Northside Quarter, St. Thomas, Virgin Islands.

Id. ¶¶ 71, 72. The notice then describes the circumstances under which the easement was originally agreed, and the details of the dates and places where the easement has been recorded since its inception. See Def. Exh. G.

9

The complaint alleges that Ethel Bryan has claimed the existence of the easement in question to various third parties. Id. ¶ 75. For example, Miss Bryan described the map depicting the easement as perfectly valid in a letter dated September 14, 2007, to the Committee of the Coastal Zone Management Commission. Id. ¶ 76. I note that as of the date of this letter, the map had been reinstated and approved by the Public Surveyor. See Compl. ¶ 57. This letter was written in furtherance of the efforts of the Bryan Estate to obtain a permit to institute a subdivision of property held by the Bryan Estate on Inner Brass Island. Id. ¶ 77. A month later, the committee approved the application of the Estate to construct a dock, but denied its application for a permit to subdivide Inner Brass Island. Id. ¶ 79. Furthermore, once the permit was approved but before the dock was constructed, Ethel Bryan published a notice in the local newspaper which read:

PUBLIC NOTICE/HULL BAY

> ETHEL BRYAN on behalf of herself and ALL members of the
> JOSEPH FAFA BRYAN FAMILY hereby notifies [sic] the public
> that the Bryan Family is NOT ASSOCIATED WITH THE HULL
> BAY/INNER BRASS GROUP WHO CALL THEMSELVES
> ISLAND GREEN. The Bryan Family has recently been advised that
> plans are already in place and ready to be signed to BUILD
> CONDOMINIUMS ON HULL BAY BEACH, REROUTE the
> HULL BAY BEACH ACCESS ROAD, BUILD A DOCK ON
> HULL BAY AND ILLEGALLY DESTROY THE FEDERALLY
> PROTECTED NATURAL MANGROVE LOCATED ON HULL
> BAY.

Id. ¶ 80. This notice was signed "Ethel Bryan, Representative of the Bryan Heirs." The plaintiff alleges that when the notice was published, it had no such approved plans or

application for approval of plans to build any condominiums on the site, or to reroute the access road, or to build a dock on Hull Bay, or to destroy mangroves. Id. ¶ 81, 82. It did have plans, however, to construct a dock on its own property. Id. ¶ 83. The plaintiff further contends that this notice was intended to affect public opinion about Island Green and its plans to construct a dock which were opposed by the Bryan Estate. Id. ¶ 84. In fact, the plaintiff alleges, direct threats to the lives of persons affiliated with Island Green were made prior to the public hearing on the Island Green permit application. Id. ¶ 85. As a result, the first scheduled public hearing had to be canceled, and security guards were in attendance at the rescheduled hearing. Id. ¶ 86. After the Estate's notice was published in the newspaper, and after the public hearing, the plaintiff voluntarily withdrew its application for a permit to construct a dock on Inner Brass Island. Id. ¶ 87.

The plaintiff further alleges that even after its withdrawal of the application for a permit, the Bryan Estate has attempted to interfere with the plaintiff's attempts to undertake the construction of a small cottage on Inner Brass Island by writing various letters to the Office of Coastal Zone Management urging it to issue cease and desist orders and to otherwise prevent the construction. Id. ¶ 88. Notwithstanding the Estate's resistance, the plaintiff was granted a permit to build the cottage on its property. Id. ¶ 89.

Finally, the plaintiff alleges that Ethel Bryan removed and destroyed certain trees located on Parcel No. 3, without the plaintiff's authorization, and without issuance of any permits. Id. ¶ 91.

## II. STANDARD OF REVIEW

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Facial attacks contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true. Dismissal under a facial challenge is proper only when the claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or is wholly insubstantial and frivolous. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-1409 (3d Cir. 1991).

In contrast, a trial court considering a factual attack, i.e., an attack based on the sufficiency of jurisdictional fact, accords a plaintiff's allegations no presumption of truth. Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002). Where subject matter jurisdiction "in fact" is challenged, the trial court's very power to hear the case is at issue, and the court is therefore "free to weigh the evidence and satisfy itself as to the power to hear the case." Mortensen v. First Federal Savings and Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977).

Likewise, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure also asks the court to examine the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations of the complaint must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to

dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 555. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 555).

In a 12(b)(6) motion, courts generally consider the allegations contained in the complaint, exhibits attached to the complaint, and public records of which the court may take judicial notice. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). A court may also consider an undisputedly authentic document that

a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Id.

## III. **DISCUSSION**

The defendants argue that this case must be dismissed because the "plaintiff has failed to pursue its claims in the existing and appropriate forum by the prescribed procedures for the adjudication of such claims." See Def's Br. at 2. Specifically, the defendants contend that the plaintiff's claim to the Bryan Estate's executrix did not comport with statutory requirements, and that the plaintiff failed to wait the specified period before filing the complaint in federal court. Id. I am constrained to agree.

The Virgin Islands Probate Code provides that a party with a claim against an Estate must first present the claim to the executrix to be either allowed or rejected by her. See 15 V.I.C. § 395.[6] If the executrix "refuses to allow any claim, the claimant may present the claim to the court or judge thereof for allowance." Id. An action against an

---

[6] Section 395 of Title 15 of the Virgin Islands Code provides: "If any executor or administrator refuses to allow any claim or demand against the deceased after it has been exhibited to him in accordance with the provisions of this subchapter, the claimant may present his claim to the court or the judge thereof for allowance, giving the executor or administrator thirty days' notice of such application to the court. The district court shall hear and determine in a summary manner all demands against any estate in accordance with the provisions of this chapter, and which have been so rejected by the executor or administrator, and shall cause a concise entry of the order of allowance or rejection to be made on the record. The order shall have the force and effect of a judgment, from which an appeal may be taken as in ordinary cases. No claim which has been rejected by the executor or administrator as aforesaid shall be allowed by the court, except upon some competent or satisfactory evidence other than the testimony of the claimant. No claim shall be allowed by the executor or administrator or the district court which is barred by the statute of limitations."

executrix *shall not* be commenced until the claim of the plaintiff has been duly presented to the executrix and disallowed by her. See 15 V.I.C. § 606(b)[7] (emphasis added). I note that it has been determined that Section 606(b) is a mandatory provision. See Oak v. Sewer Enterprises, Ltd., 46 V.I. 286, 290 (D.V.I. 2004).

The defendant argues that the probate claim presented to the executrix of the Bryan Estate by the plaintiff was unaccompanied by a sworn affidavit, and is therefore not in compliance with Section 393 of the Probate Code.[8] In addition, the defendant contends that the probate claim also failed to set forth a specific dollar claim which is necessary to allow the Estate to determine whether the amount claimed is justly due. Accordingly, the defendant claims, because the claim failed to meet these mandatory conditions, it must be dismissed.

Initially, I note that plaintiff's counsel executed a Notice of Claim on April 1, 2009 and filed it in the Superior Court of the Virgin Islands in connection with the probate of

---

[7] Section 606(b) of Title 15 of the Virgin Islands Code provides: "An action against an executor or administrator shall not be commenced until the claim of the plaintiff has been duly presented to such executor or administrator and by him disallowed. If such claim is presented after the expiration of the period of six months mentioned in sections 391 and 392 of this title, the executor or administrator in an action therefor shall only be liable to the extent of the assets in his hands at the time the summons is served upon him."

[8] Section 393 of Title 15 of the Virgin Islands Code provides: "Every claim presented to the executor or administrator shall be verified by the affidavit of the claimant, or someone on his behalf who has personal knowledge of the facts, to the effect that the amount claimed is justly due; that no payments have been made thereon, except as stated; and that there is no just counterclaim to the same, to the knowledge of the affiant. When it appears or is alleged that there is any written evidence of such claim the same may be demanded by the executor or administrator, or he may demand that its non-production be accounted for."

the Bryan Estate. See Def's Exh. H. There was no verification by affidavit of the claimant filed with the Notice as required by Section 393. No where in the Notice did counsel aver that he had personal knowledge of the facts presented. Counsel provided no reason in the Notice why the claimant itself did not sign the notice or was unable to sign it. See Chas. H. Steffey, Inc. v. Estate of Dr. Maurice Petion Savain, 15 V.I. 260, 266 (Terr.Ct.V.I. 1978). A few days following the filing of the defendants' motion to dismiss in which these deficiencies were noted, the plaintiff filed a Notice of Filing Verification of Claim. In that verification, the sole principal of the plaintiff submitted a signed and sworn affidavit indicating that he had read counsel's earlier Notice of Claim dated April 1, 2009, and that he has personal knowledge of the facts set forth therein. Whether this supplemental filing is sufficient to cure these deficiencies is not dispositive here.

There are other serious deficiencies in the Notice which have not yet been addressed by the plaintiff. For example, counsel's initial Notice of Claim indicated, "Island Green asserts that the wrongful acts of the Estate have caused damages to Island Green in excess of $75,000." This is insufficient. The presentation and verification of a claim is the initial procedural step that a creditor must follow in the settlement of estates so that the legal representative or fiduciary can act completely after knowing just what is claimed. See Estate of Savain, 15 V.I. at 264-265. Informing the estate of a sum certain in the Notice of Claim is a basic requirement to any probate claims process, and should acquaint the executrix with a specific amount allegedly due and the general nature of the

obligation.  See Quinn v. Quinn, 772 P.2d 979, 980 (Utah App. 1989).  Otherwise, the executrix is left with the unfair task of guessing what sum the creditor of the estate is seeking.  Here, if the plaintiff's Notice of Claim had provided the Bryan Estate with the extent and character of the claim as required, Miss Querrard, as Executrix, would have been able to perform her duties in acting upon claims against her father's estate, by letting her know what the claim is, and giving her the opportunity to examine the claim and approve it or reject it.  Without that proper notice, Miss Querrard was left to guess about the exact amount of the Probate Claim.

Even if the Notice of Claim were properly filed with no deficiencies, it remains that the plaintiff filed a complaint in federal court prematurely.  Once the estate is properly informed of a claim against it, the executrix is given time in which to review the claim and either approve it or reject it.  See 15 V.I.C. § 394.[9]  Counsel's Notice of Claim was signed on April 1, 2009.  The plaintiff claims that it was filed and served on the same day by the United States Postal Service.[10]  On April 3, 2009, two days later, the plaintiff

---

[9] Section 394 of Title 15 of the Virgin Islands Code provides:  "When a claim is presented to the executor or administrator, as prescribed in section 393 of this title, if he is satisfied that the claim thus presented is just, he shall indorse upon it the words "Examined and approved," with the date thereof, and sign the same officially, and shall pay such claim in due course of administration.  If he is not so satisfied he shall indorse thereon the words "Examined and rejected," with the date thereof, and sign the same officially.  Every executor or administrator shall keep a list of all demands legally exhibited against the estate of the testator or intestate, and shall every three months file with the court a statement of all such claims as have been presented, and whether the same have been allowed or rejected by him.

[10] The plaintiff contends that Miss Querrard refused service of the Notice of Claim which was returned to the sender unopened.  The plaintiff characterizes this as evasion of process.  It
(continued...)

filed this complaint, without waiting the anticipated period as provided in the Code. The executrix is given up to "three months" from the time of presentment of a claim to advise the probate judge of the submission of a claim and her disposition of it. Id. The Bryan Estate was afforded no time to review the plaintiff's claims.

After a thorough review of the pleadings and the documents upon which allegations in the complaint were based, I must find that the plaintiff has failed to comply with the statutory requirements for presenting a proper claim to the Bryan Estate. Accordingly, because of this failure to meet these mandatory conditions, I will dismiss this complaint in its entirety. See Estate of Savain, 15 V.I. at 266 (dismissing case for failure to present a proper claim to the executor supported by an affidavit); see also Oak, 46 V.I. at 290-291 (dismissing the case where requirements of first presenting a claim to the executor and having it disallowed were not met, and holding that § 606(b) demands that the court grant the motion to dismiss in those circumstances).

An appropriate Order follows.

---

[10](...continued)
then arranged for hand-delivery to Miss Querrard on April 20, 2009. See Pl's Br. at 9, n. 13. Either way, the Estate had virtually no time to address the claims as anticipated by Section 394.